IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-592-D

| | |
|---|---|
| SHANEKA MANGUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| ROSS DRESS FOR LESS, INC., ) | |
| ) | |
| Defendant. ) | |

On May 24, 2023, Shaneka Mangum ("Mangum" or "plaintiff") filed a complaint in Cumberland County Superior Court against Ross Stores, Inc., ("Ross" or "defendant") and failed to serve a copy of the complaint on Ross. See [D.E. 1] ¶ 1.[1] On August 30, 2024, Mangum filed an amended complaint in Cumberland County Superior Court against Ross. [D.E. 1-2]. Mangum alleges race discrimination in violation of 42 U.S.C. § 1981, wrongful discharge due to her race in violation of North Carolina public policy, and negligence. See id. On October 17, 2024, Ross removed the action to this court [D.E. 1].

On November 25, 2024, Ross moved to compel arbitration, attached the dispute resolution agreement ("DRA") that Mangum electronically signed, and filed a memorandum in support [D.E. 12, 12-1, 13]. On December 20, 2024, Mangum responded in opposition [D.E. 18]. On January 3, 2025, Ross replied [D.E. 19]. As explained below, the court grants Ross's motion to compel arbitration, stays the action, and orders the parties to arbitrate this dispute.

---

[1] The clerk shall correct the defendant's name in this case.

1

I.

Ross "is a leading off-price retailer of . . . brand-named and designer apparel with stores in more than 30, states, including North Carolina." [D.E. 13]; see Am. Compl. [D.E. 1-2] ¶ 2. Mangum is "an African-American [sic] celibate female." Am. Compl. ¶ 1. In November 2016, Mangum began work as a full-time store associate for Ross in Fayetteville, North Carolina. See id. at ¶ 1–2, 10; [D.E. 13] 2. On November 14, 2016, Mangum electronically signed Ross's DRA. See [D.E. 13] 2; [D.E. 12-1] 1–5. The DRA required Mangum to resolve "covered disputes" by "final and binding arbitration and not by a court or jury." [D.E. 12-1] 1.

Mangum "worked approximately three years . . . [for Ross] without incident." Am. Compl. ¶ 11. Mangum alleges "it became known that Magnum was celibate." Id. at ¶ 12. Additionally, Mangum "made it known [to her coworkers and management] that she did not want to be touched by co-workers." Id. at ¶ 13. Mangum describes celibacy as her "sexual orientation" and alleges that "[o]nce it became known that Mangum was celibate and desire[d] not to be touched, Mangum began to endure harassment from members of store management, as well as other co-workers." Id. at ¶ 14.

On June 22, 2019, Mangum received a favorable performance evaluation. See id. at ¶ 15. On December 24, 2019, Mangum alleges her shift manager, Ajala Van Dyke ("Van Dyke"), and her supervisor, Devetria Kim ("Kim"), made offensive comments to Mangum about Mangum's genitalia and "suggested that Mangum engaged in masturbation." Id. at ¶ 16.

On January 4, 2020, Mangum alleges Van Dyke made offensive comments about Mangum's genitalia in front of customers. See id. at ¶ 17. Later that week, Mangum alleges Kim and another store manager, Shawn Walker ("Walker"), called Mangum "the N word." Id. at ¶ 18.

2

On January 17, 2020, Mangum alleges two of her co-workers "engaged in a conversation about Mangum's genitalia." Id. at ¶ 19. On February 15, 2021, Mangum alleges "several co-workers" called her "the N word." Id. at ¶¶ 20–21.

On February 12, 2022, Mangum filed a complaint with the Equal Employment Opportunity Commission ("EEOC") "alleging a hostile work environment that included racial slurs, sexual harassment, mental anguish and emotional distress." Id. at ¶ 22. Mangum did not file a copy of her EEOC charge and fails to allege the EEOC issued her a right to sue notice.

Mangum alleges that "[a] couple days after filing her EEOC [c]omplaint," an unnamed supervisor "invaded [Mangum's] personal space with a knife." Id. at ¶ 23. Mangum reported this incident to Ross's human resource department. See id. Mangum also reported other instances of harassment to human resources but "no action was ever taken on Mangum's behalf." Id. at ¶ 26.

Ross fired Mangum "[a]fter Mangum filed her EEOC [c]omplaint, but before the investigation was concluded." Id. at ¶ 27. On August 30, 2024, after failing to properly serve Ross, Mangum filed her amended complaint. See [D.E. 1] ¶¶ 1, 3. Ross argues the DRA covers Mangum's claims and moves to compel arbitration and to stay proceedings pending arbitration. See [D.E. 12].

II.

A.

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67 (2010); Amos v. Amazon Logistics, Inc., 74 F.4th 591, 595 (4th Cir. 2023). To compel arbitration, Ross must show: "(1) a dispute exists between the parties; (2) the dispute falls within the scope

3

of a written, valid agreement that includes an arbitration provision; (3) the parties' agreement relates to interstate or foreign commerce; and (4) the opposing party has failed or refused to arbitrate the dispute at hand." Amos, 74 F.4th at 595; see Adkins v. Lab. Ready, Inc., 303 F.3d 496, 500–01 (4th Cir. 2002); De Sa v. RPS Holdings, LLC, 577 F. Supp. 3d 395, 396–97 (E.D.N.C. 2022) (collecting cases).

Under the FAA, a court interprets an arbitration agreement according to the intentions of the parties. See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); Wash. Square Sec., Inc. v. Aune, 385 F.3d 432, 435 (4th Cir. 2004). Although a court interprets an arbitration agreement using principles of state contract law, a court must give "due regard . . . to the federal policy favoring arbitration." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989); see Wachovia Bank, Nat'l Ass'n v. Schmidt, 445 F.3d 762, 767 (4th Cir. 2006); Newman v. First Montauk Fin. Corp., No. 7:08-CV-116, 2010 WL 2933281, at *4–5 (E.D.N.C. July 23, 2010) (unpublished). Accordingly, "the parties' intentions are generously construed as to issues of arbitrability, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Newman, 2010 WL 2933281, at *4 (quotations and citation omitted); see Mitsubishi Motors Corp., 473 U.S. at 626; Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983), superseded by statute on other grounds, 9 U.S.C. § 16(b)(1); Aune, 385 F.3d at 436.

The FAA creates a "presumption of arbitrability." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986). A court must resolve any doubts in favor of arbitration and compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id.; see, e.g., Moses H. Cone Mem'l Hosp., 460 U.S. at 24–25; Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380

4

F.3d 200, 204 (4th Cir. 2004). "[T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989). Furthermore, where an arbitration clause is reasonably susceptible of an interpretation that covers the dispute between the parties, only an "express provision" in the arbitration agreement excluding the dispute or "the most forceful evidence of a purpose to exclude the claim from arbitration" suffices to preclude arbitration. Aune, 385 F.3d at 436 (quotations omitted).

Ross argues that the DRA covers Mangum's claims and that Ross has satisfied its burden under the FAA to compel arbitration. See [D.E. 13] 3–5. In response, Mangum does not challenge the DRA's validity. Instead, Mangum argues that because she specifically alleges sexual harassment and sexual assault in her amended complaint, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), Pub. L. No. 117–90, 136 Stat. 26 (codified at 9 U.S.C. §§ 401, 402) invalidates the DRA. See [D.E. 18] 1–4.

Ross replies that the court should reject Mangum's arguments because Mangum does not plausibly allege a sexual harassment claim or a sexual assault claim in her amended complaint. Ross also notes that the EFAA applies only to a "dispute or claim that arises or accrues on or after the date of enactment of this act." EFAA § 3, 136 Stat. 28. The EFAA became law on March 3, 2022. See Pub. L. 117–90; Palmer v. Johns Island Post Acute, LLC, No. CV 2:22-3432, 2023 WL 4409038, at *8 (D.S.C. Mar. 7, 2023) (unpublished), report and recommendation adopted, No. 2:22-CV-3432, 2023 WL 4117366 (D.S.C. June 22, 2023) (unpublished). Ross then argues that Mangum fails to allege that her claims accrued on or after March 3, 2022.

Federal district courts are split concerning the appropriate standard to apply to determine whether the EFAA applies. See, e.g., Cardenas v. F.D. Thomas, Inc., No. 2:24-CV-1814, 2025

5

WL 418753, at *3 (E.D. Cal. Feb. 6, 2025) (unpublished); Diaz-Roa v. Hermes L., P.C., No. 24-CV-2105, 2024 WL 4866450, at *14 (S.D.N.Y. Nov. 21, 2024) (unpublished); Yost v. Everyrealm, Inc., 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023). Moreover, the United States Court of Appeals for the Fourth Circuit has not addressed this issue.

Some federal district courts apply the plausibility standard from Federal Rule of Civil Procedure 12(b)(6), Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 543–63 (2007), to determine whether a plaintiff has plausibly alleged a sexual harassment claim or sexual assault claim and thereby can invoke the EFAA's arbitration preclusion. See, e.g., Halle Van De Hey v. EPAM Systems Inc., No. 24-CV-8800, 2025 WL 829604, at *3 (N.D. Cal. Feb. 28, 2025) (unpublished); Arouh v. GAN Ltd., No. 23-CV-2001, 2024 WL 3469032, at *6 (C.D. Cal. Mar. 22, 2024) (unpublished); Johnson v. Everyrealm, Inc., 657 F. Supp. 3d 535, 551–52 (S.D.N.Y. 2023); Singh v. Meetup LLC, 750 F. Supp. 3d 250, 254 (S.D.N.Y. 2024) (collecting cases), reconsideration denied, 2024 WL 4635482 (S.D.N.Y. Oct. 31, 2024) (unpublished); Yost, 657 F. Supp. 3d at 585. Other federal district courts require a plaintiff to plead only a nonfrivolous sexual harassment claim or sexual assault claim to invoke the EFAA's arbitration preclusion, with the sufficiency of the claim reserved for later adjudication. See, e.g., Cardenas, 2025 WL 418753, at *3–4; Gill v. U.S. Data Mgmt., LLC, No. 2:24-CV-5255, 2024 WL 5402494, at *3 (C.D. Cal. Dec. 2, 2024) (unpublished); Diaz-Roa, 2024 WL 4866450, at *14.

In considering whether the EFAA incorporates Rule 12(b)(6)'s plausibility standard, the court examines the ordinary meaning of the statutory text, interprets specific provisions of the text within the broader statutory context, applies certain canons of construction, and considers relevant precedent. See, e.g., Jones v. Hendrix, 599 U.S. 465, 472–80, 490–91 (2023); Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin, 599 U.S. 382, 387–88 (2023); MOAC Mall

Holdings LLC v. Transform Holdco LLC, 598 U.S. 288, 298–303 (2023); Sackett v. EPA, 598 U.S. 651, 679–83 (2023); Fin. Oversight Mgt. Bd. for P.R. v. Centro De Periodismo Investigativo, Inc., 598 U.S. 339, 346–50 (2023); Ciminelli v. United States, 598 U.S. 306, 314–16 (2023); Santos-Zacaria v. Garland, 598 U.S. 411, 416–23 (2023); Wilkins v. United States, 598 U.S. 152, 157–59 (2023); West Virginia v. EPA, 597 U.S. 697, 721–23 (2022); Boechler, P.C. v. Comm'r of Internal Rev., 596 U.S. 199, 203–08 (2022); Penneast Pipeline Co. v. New Jersey, 594 U.S. 482, 506–08 (2021); Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 137 (2020); Opati v. Republic of Sudan, 590 U.S. 418, 425–29 (2020); Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 589 U.S. 327, 333 (2020); see also Mayor & City Council of Baltimore v. BP P.L.C., 31 F.4th 178, 220 (4th Cir. 2022); Brown & Williamson Tobacco Corp. v. Food & Drug Admin., 153 F.3d 155, 162 (4th Cir. 1998); United States v. Jackson, 759 F.2d 342, 344 (4th Cir. 1985).

The court begins with the statute's text. See United States v. Quality Stores, Inc., 572 U.S. 141, 145 (2014); Mississippi ex rel. Hood v. AU Optronics Corp., 571 U.S. 161, 168 (2014); Sebelius v. Cloer, 569 U.S. 369, 376 (2013); BP Am. Prod. Co. v. Burton, 549 U.S. 84, 91 (2006); Cela v. Garland, 75 F.4th 355, 364 (4th Cir. 2023), cert. denied, 144 S. Ct. 2657 (2024); Davidson v. United Auto Credit Corp., 65 F.4th 124, 128 (4th Cir. 2023). The court must give effect "to every clause and word of a statute." Loughrin v. United States, 573 U.S. 351, 358 (2014); see In re Bateman, 515 F.3d 272, 277 (4th Cir. 2008); Hedin v. Thompson, 355 F.3d 746, 750 (4th Cir. 2004). The inquiry ceases if the statute is unambiguous, and "the statutory scheme is coherent and consistent." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997); Brown & Williamson Tobacco Corp., 153 F.3d at 162.

7

The EFAA amended the FAA. The EFAA states: "[n]otwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a); see Mulugu v. Duke Univ. Sch. of Med., No. 1:23CV957, 2024 WL 3695220, at *22 (M.D.N.C. Aug. 7, 2024) (unpublished), report and recommendation adopted, No. 1:23-CV-957, 2024 WL 3991682 (M.D.N.C. Aug. 29, 2024) (unpublished); Palmer, 2023 WL 4409038, at *8; Gibson v. Giles Chem. Corp., No. 1:20-CV-394, 2022 WL 1446805, at *1 (W.D.N.C. May 6, 2022) (unpublished). The EFAA defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). The EFAA defines "a sexual assault dispute" as "a dispute involving a nonconsensual sexual act or sexual contact, as such terms are defined in section 2246 of title 18 or similar applicable Tribal or State law, including when the victim lacks capacity to consent." Id. at § 401(3).

The court, and not the arbitrator, determines whether the EFAA applies. See 9 U.S.C. § 402(b) (the EFAA's applicability "shall be determined by a court, rather than an arbitrator," under Federal law, "irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing the agreement," or "whether the agreement purports to delegate such determinations to an arbitrator"); Walters v. Starbucks Corp., 623 F. Supp. 3d 333, 336–37 (S.D.N.Y. 2022). Section 402(a) establishes who may invoke the EFAA: any "person alleging conduct constituting a sexual harassment dispute." 9 U.S.C. § 402(a). Section 401(4) then clarifies how a person invokes the EFAA: by alleging conduct that "constitute[s] sexual harassment under applicable Federal, Tribal,

8

or State law." 9 U.S.C. § 401(4); see, e.g., Yost, 657 F. Supp. 3d at 584–85. The same principles apply to a person alleging a sexual assault dispute. See 9 U.S.C. § 401(3); see, e.g., Yost, 657 F. Supp. 3d at 584–85.

In Mangum's amended complaint, she alleges race discrimination in violation of 42 U.S.C. § 1981, wrongful discharge due to her race in violation of North Carolina public policy, and negligence. See Am. Compl. ¶¶ 9–52. Mangum's amended complaint does not include conduct constituting a sexual harassment dispute under either North Carolina law or Title VII of the Civil Rights Act of 1964 ("Title VII"). Moreover, although Mangum's amended complaint alleges sexual comments and alleges she filed an EEOC charge using the term "sexual harassment," the EFAA's plain language requires a person to allege "conduct constituting a sexual harassment dispute." 9 U.S.C. § 402(a); Yost, 657 F. Supp. 3d at 585. Likewise, to the extent Mangum contends that her amended complaint contains a "sexual assault dispute" as defined in section 401(3), it does not. See Am. Compl. ¶¶ 9–52.

In analyzing whether the EFAA invalidates the DRA, the court must consider whether—"when a plaintiff's basis to invoke the EFAA is that her complaint claims a violation of a Federal, Tribal, or State law against sexual harassment [or sexual assault]—such a claim must be plausibly pled." Yost, 657 F. Supp. 3d at 585 (quotation omitted). In Yost, the court concluded that the "term 'alleged' as used in § 401(4) is best read to implicitly incorporate the plausibility standard." Id. The Yost court then persuasively explained why. First, Congress knew about the plausibility standard under Rule 12(b)(6), Iqbal, and Twombly when it enacted the EFAA. Second, "requiring a sexual harassment claim [or a sexual assault claim] to be capable of surviving dismissal at the threshold of litigation fully vindicates the purposes of the EFAA" by empowering "sexual harassment claimants [or sexual assault claimants] to pursue their claims" in court rather than

9

arbitration. Id. at 586. Third, allowing implausibly alleged claims to defeat arbitration agreements "would affront Congress's intent in enacting the FAA—of which, critically, the EFAA is a part." Id. at 586. Fourth, "although not dispositive on this point, courts in other contexts have construed the statutory term 'allege' in accord" with this construction. Id. at 585–87 (cleaned up).

This court agrees with the district court's conclusion in Yost. Thus, the court examines whether Mangum has plausibly alleged a sexual assault dispute or a sexual harassment dispute as defined in the EFAA in her amended complaint. See Fed. R. Civ. P. 12(b)(6); Iqbal, 556 U.S. at 677–80; Tombly, 550 U.S. at 554–63.

Under Rule 12(b)(6), the court considers the amended complaint's legal and factual sufficiency. See Iqbal, 556 U.S. at 677–80; Twombly, 550 U.S. at 554–63; Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). A pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. Under Rule 12(b)(6), the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true an amended complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether [an amended] complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the allegation does not suffice. Id. A court may consider the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the [amended] complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the [amended] complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Mangum must plausibly allege a sexual harassment dispute or sexual assault dispute, as defined by the EFAA, to invoke the EFAA and avoid arbitration. See 9 U.S.C. § 402(b); Yost, 657 F. Supp. 3d at 583–85; Walters, 623 F. Supp. 3d at 336–37. The EFAA defines a sexual harassment dispute as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). The EFAA defines a sexual assault dispute as "a dispute involving a nonconsensual sexual act or sexual contact, as such terms

11

are defined in section 2246 of title 18 or similar applicable Tribal or State law, including when the victim lacks capacity to consent." 9 U.S.C. § 401(3).

As for whether Mangum plausibly alleges a "sexual assault dispute" in her amended complaint, she does not. See Am. Compl. ¶¶ 9–52; cf. 18 U.S.C. § 2246(2) (defining "sexual act"); 18 U.S.C. § 2246(3) (defining "sexual contact"). Thus, 9 U.S.C. § 402(a) and § 401(4) do not invalidate the DRA.

As for whether Mangum plausibly alleges a "sexual harassment dispute" in her amended complaint under 9 U.S.C. § 402(a) and § 401(4), the court examines whether Mangum plausibly alleges a Title VII sexual harassment claim. To state a sexually hostile work environment claim under Title VII, Mangum must plausibly allege that (1) she experienced unwelcome conduct, (2) the conduct was based on her sex, (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) the conduct is imputable to the employer. See, e.g., Cosby v. S.C. Prob., Parole & Pardon Servs., 93 F.4th 707, 716 (4th Cir. 2024); Laurent-Workman v. Wormuth, 54 F.4th 201, 210–12 (4th Cir. 2022); Chapman v. Oakland Living Ctr., Inc., 48 F.4th 222, 229 (4th Cir. 2022); Perkins v. Int'l Paper Co., 936 F.3d 196, 207–08 (4th Cir. 2019); Parker v. Reema Consulting Servs., Inc., 915 F.3d 297, 302 (4th Cir. 2019); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc); Okoli v. City of Balt., 648 F.3d 216, 220–21 (4th Cir. 2011); E.E.O.C. v. Fairbrook Med. Clinic, P. A., 609 F.3d 320, 327 (4th Cir. 2010); Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir. 2008); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc); Evans v. Capitol Broad Co., 716 F. Supp. 3d 387, 402–04 (E.D.N.C. 2024); Coleman v. Altec, Inc., No. 5:16-CV-954, 2018 WL 4289610, at *3 (E.D.N.C. Sept. 7, 2018) (unpublished); Brown v. Wake Cnty. Gov't, No. 5:16-CV-806, 2017 WL 2982971, at *5 (E.D.N.C. July 12, 2017) (unpublished). An employee also must

12

plausibly allege that her protected characteristic was the "but for" cause of the alleged harassment. See, e.g., Gilliam v. S.C. Dep't Of Juv. Just., 474 F.3d 134, 142 (4th Cir. 2007).

To determine whether conduct was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and create an abusive working environment based on her sex, the court examines the allegations both subjectively and objectively. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993). First, the employee must subjectively consider the conduct to be sufficiently severe or pervasive as to alter her conditions of employment. See, e.g., Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (per curiam); Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Boyer-Liberto, 786 F.3d at 277. Second, a court views the conduct from the perspective of a reasonable person in the employee's position to determine whether it is objectively severe or pervasive. See, e.g., Breeden, 532 U.S. at 271; Faragher, 524 U.S. at 787–88; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81–82 (1998); Boyer-Liberto, 786 F.3d at 277.

The objective component helps courts "to police the baseline for hostile environment claims." Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc) (quotation omitted). The court considers all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Forklift Sys., Inc., 510 U.S. at 23; see Parker, 915 F.3d at 304. The conduct must be severe or pervasive to be actionable. See Forklift Sys., Inc., 510 U.S. at 23; Faragher, 524 U.S. at 787–88; Boyer-Liberto, 786 F.3d at 277–78. Title VII does not create "a general civility code for the American workplace." Oncale, 523 U.S. at 80; see Irani v. Palmetto Health, 767 F. App'x 399, 416 (4th Cir. 2019) (per curiam) (unpublished). Rather, the "conduct must . . . amount to a change in the terms

13

and conditions of employment." Faragher, 524 U.S. at 788; see Boyer-Liberto, 786 F.3d at 277–81. Simple teasing, sporadic rude language, offhand comments, jokes related to a protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. See Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68–69 (2006); Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 788; cf. Chapman, 48 F.4th at 228–34; Boyer-Liberto, 786 F.3d at 277–81. Likewise, mere rude or insensitive treatment cannot sustain a hostile work environment claim. See, e.g., Bonds v. Leavitt, 629 F.3d 369, 385–86 (4th Cir. 2011); Baqir v. Principi, 434 F.3d 733, 746–47 (4th Cir. 2006); see also Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; cf. Chapman, 48 F.4th at 228–34; Boyer-Liberto, 786 F.3d at 277–81; Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 207–10 (4th Cir. 2014); Freeman v. Dal-Tile Corp., 750 F.3d 413, 420–24 (4th Cir. 2014); Okoli, 648 F.3d at 220–22.

"The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by simple recitation of the words used or the physical acts performed." Oncale, 523 U.S. at 81–82. "Common sense, and an appropriate sensitivity to social context," will enable courts to distinguish between teasing, distasteful jokes, sporadic rude language, vulgarity, stupidity, offhand comments, and insensitive treatment and "conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive" based on her sex. Id. at 82; Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 771–74 (4th Cir. 1997).

Although hostile work environment claims often involve repeated conduct, an "isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious." Boyer-Liberto, 786 F.3d at 277 (quotations

14

and alterations omitted); see Pryor v. United Air Lines, Inc., 791 F.3d 488, 496 (4th Cir. 2015); Okoli, 648 F.3d at 220 & n.5. In assessing the severity of the harassing conduct, the status of the harasser is an important factor. See Boyer-Liberto, 786 F.3d at 278; Sonnier v. Diamond Healthcare Corp., 114 F. Supp. 3d 349, 356 (E.D. Va. 2015). A "supervisor's power and authority invests his or her harassing conduct with a particular threatening character." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 763 (1998); see Boyer-Liberto, 786 F.3d at 278.

To impute liability to an employer for an employee's sexual harassment, a plaintiff must demonstrate that "after having acquired actual or constructive knowledge of the allegedly harassing conduct, the employer had taken no prompt and adequate remedial action to correct it." Mikels v. City of Durham, 183 F.3d 323, 329 (4th Cir. 1999) (alteration and quotation omitted) (collecting cases); see Pryor, 791 F.3d at 498; Freeman, 750 F.3d at 423; E.E.O.C. v. Xerxes Corp., 639 F.3d 658, 669 (4th Cir. 2011); E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 319 (4th Cir. 2008). As for an employer's remedial actions, "Title VII requires only that the employer take steps reasonably likely to stop the harassment." Bazemore v. Best Buy, 957 F.3d 195, 202 (4th Cir. 2020) (quotation omitted); see Xerxes Corp., 639 F.3d at 669. In assessing remedial actions, the court must consider, inter alia, "the promptness of the employer's investigation when complaints are made, whether offending employees were counseled or disciplined for their actions, and whether the employer's response was actually effective" in stopping the conduct of which plaintiff complains. Xerxes Corp., 639 F.3d at 669; see Bazemore, 957 F.3d at 202; Pryor, 791 F.3d at 498. "[S]o long as discipline is reasonably calculated to end the [offensive] behavior, the exact disciplinary actions lie within [the employer's] discretion." Bazemore, 957 F.3d at 202. "A remedial action that effectively stops the harassment will be deemed adequate as a matter of law." Xerxes Corp., 639 F.3d at 670 (quotation omitted); Bazemore, 957 F.3d at 201–02.

15

Even accepting the allegations in Mangum's amended complaint as true, Mangum does not plausibly allege a sexual harassment claim under Title VII or conduct that "constitute[s] sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). Accordingly, the EFAA does not invalidate the DRA. In light of these conclusions, the court declines to address Ross's argument that Mangum failed to allege that her claims arose or accrued on or after March 3, 2022.

B.

The record demonstrates: (1) the existence of a dispute between Ross and Mangum; (2) a written arbitration agreement purporting to cover the dispute that is enforceable under contract law; (3) the relationship of the transaction, as evidence by the arbitration agreement, to interstate commerce; and (4) Mangum's refusal to arbitrate the dispute. Moreover, the EFAA does not invalidate the DRA. Thus, the court grants Ross's motion to compel arbitration. See, e.g., Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 65–72 (2019); Epic Sys. Corp. v. Lewis, 584 U.S. 497, 505–25 (2018); Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 232–39 (2013); Marmet Health Care Ctr., Inc. v. Brown, 565 U.S. 530, 531–33 (2012) (per curiam); CompuCredit Corp. v. Greenwood, 565 U.S. 95, 98 (2012); AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344–52 (2011); Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56–58 (2003) (per curiam); Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91–92 (2000); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24–26 (1991); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985); Moses H. Cone Mem'l Hosp., 460 U.S. at 24–28; Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 89–90 (4th Cir. 2016); Santoro v. Accenture Fed. Servs., LLC, 748 F.3d 217, 221–24 (4th Cir. 2014); Muriithi v. Shuttle Express, Inc., 712 F.3d 173, 177–85 (4th

16

Cir. 2013); Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 697–98 (4th Cir. 2012); Adkins, 303 F.3d at 500–07; Newman, 2010 WL 2933281, at *7–8.

Ross asks the court to "[s]tay these proceedings pending the outcome of arbitration." [D.E. 12] 2. Under 9 U.S.C. § 3, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. Thus, the court grants Ross's motion to compel, stays these proceedings pending the outcome of arbitration, and compels Mangum to arbitrate her claims. See, e.g., Smith v. Spizzirri, 601 U.S. 472, 477–79 (2024).

III.

In sum, the court GRANTS defendant's motion to compel arbitration [D.E. 12], STAYS the action, and ORDERS the parties to arbitrate their dispute.

SO ORDERED. This 7 day of April, 2025.

JAMES C. DEVER III
United States District Judge